RECEIVED
SEP - 2 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| LINDA BOUDREAUX | CIVIL ACTION NO. 04-2149 |
| VS. | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's unfavorable disability finding. Considering the administrative record, the briefs of the parties and the applicable law, it is recommended that the Commissioner's decision be **REVERSED**.

*Background*

Born on October 12, 1947, Linda Boudreaux ("Boudreaux") is a 57-year-old claimant with a tenth-grade education and a General Equivalency Diploma ("GED"). (Tr. 393). Boudreaux has worked in the past as a seamstress and a cashier. (Id.).

The record shows that Boudreaux was insured for disability benefits through December 31, 1996. In order to obtain disability insurance benefits under Title II of the Act, Boudreaux must show that she was disabled on or before the expiration date of her insured status. 42 U.S.C. §§423(a)(6) and 416(I)(3); see also Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992); Ivy v. Sullivan, 898 F.2d 1025 (5th Cir. 1990) (claimant bears the burden of establishing a disabling condition before the expiration of her insured status); 20 C.F.R. §404.320 (2002).

Boudreaux's effort to obtain disability insurance benefits has been a lengthy one. On March 31, 1997, Boudreaux protectively filed an application for disability insurance benefits (Tr. 44-46), alleging disability as of April 1, 1995 due to depression and low back pain. The

application was denied initially and on reconsideration. On October 23, 1998, Boudreaux had the first of three hearings before ALJ E. Wilson Crump, II. In an opinion dated February 20, 1999, the ALJ found that Boudreaux's low back pain and depression were not severe within the meaning of the regulations and that she was, therefore, not disabled. (Tr. 9-24). A request for review was denied by the Appeals Council on October 26, 2000, and suit was filed in this court.[1] The Commissioner filed an unopposed motion to remand, which was granted by the district court on August 24, 2001, although the Appeals Council did not remand the case to the ALJ until six months later, on February 25, 2002. (Tr. 483-85). In its remand order, the Appeals Council noted that although the ALJ had determined that there was no evidence of a disabling mental impairment, he had had failed to develop the record with respect to Boudreaux's alleged depression. Thus, the Appeals Council directed the ALJ to give further consideration to the opinions of Boudreaux's treating physicians regarding her depression, to complete a Psychiatric Review Technique, to further assess her residual functional capacity in light of any new medical evidence presented, and, if necessary, to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Boudreaux's ability to work. (Tr. 484-85).

On September 11, 2002, a second hearing was held before Judge Crump, and on December 10, 2002, he issued another unfavorable decision, finding again that Boudreaux's low back pain and depression were not severe. (Tr. 475-81). Boudreaux appealed the decision to the Appeals Council, which again concluded that the record was not clear as to whether Boudreaux's depression was severe during the relevant time period, specifically stating that ALJ Crump "ha[d]

---

[1] See Linda Boudreaux v. Commissioner of Social Security, Civil Action No. 00-2706, assigned to Judge Haik and Magistrate Judge Hill.

not satisfied the original remand directive, to clarify the opinions of the treating sources. Further inquiry is needed." (Tr. 497-99). The case was then remanded to a different ALJ.

On June 22, 2004, Boudreaux had a third hearing, this time before ALJ Kathleen Molinar. (Tr. 401-40). On July 29, 2004, Judge Molinar issued an unfavorable decision, finding that, although Boudreaux's low back pain and depression/anxiety are severe, she retains the residual functional capacity for a significant range of sedentary work and can perform jobs that exist in significant numbers in the national and local economies, including the jobs of assembler and freight/stock/material handler. (Tr. 387-400). Boudreaux appealed this unfavorable decision to this court on October 19, 2004.[2]

## *Assignment of Errors*

Boudreaux raises two errors on appeal: (1) The ALJ did not accord proper weight to the treating physician's opinion; and (2) due to an erroneous residual functional capacity assessment, the ALJ erred in relying upon the vocational expert's ("VE") testimony in concluding at Step 5 that she is not disabled.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292;

---

[2] Rec. Doc. 1.

Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

After careful consideration of the record, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.

I. **Medical History**

As noted above, Boudreaux must show that she was disabled prior to December 31, 1996 to be eligible for benefits. Boudreaux has been treated for low back pain for several years. According to the notes of Boudreaux's treating physician, Dr. Warren J. Degatur, Jr., a family practice specialist, he has treated Boudreaux since 1987 for back pain and depression/anxiety. Dr. Degatur's records show that he treated Boudreaux eleven times between April 1, 1995 and December 31, 1996 for various ailments including ear infections, urinary incontinence, abdominal pain, "nerves," an infection in her finger, and low back pain.

Dr. Degatur completed a lumbar spine residual functional capacity assessment and a mental impairment questionnaire for Boudreaux on October 26, 1998. Although this is after the relevant time period, Dr. Degatur testified at the administrative hearing held on June 22, 2004 that the assessment addressed Boudreaux's physical and mental impairments *as they existed prior to December 31, 1996.* (Tr. 416).

In the lumbar residual functional capacity assessment, Dr. Degatur reported that an MRI of Boudreaux's lumbar spine taken on January 7, 1992 was normal. (Tr.171-72). Nevertheless, Dr. Degatur reported that Boudreaux had a decreased range of motion and poor forward flexion, and he diagnosed chronic intractable lower back pain. He reported that Boudreaux could continuously sit for 30 minutes and stand for 10 minutes at a time, and could sit, stand, and/or walk for less than 2 hours in an 8-hour workday, with necessary periods for walking around every 5 minutes for a period of approximately 3 minutes. (Tr. 175-76). He further reported that she could occasionally lift and carry 10 lbs, but never lift and carry more than 20 lbs. (Tr. 177). He also reported that she had significant limitations in doing repetitive reaching, handling, and

fingering. (Id.). Finally, Dr. Degatur reported that her "good days" at work would be "rare." (Tr. 178).

With respect to her mental limitations, Dr. Degatur reported that he had treated Boudreaux for generalized anxiety disorder since October 2, 1987, averaging 2-4 visits per year. (Tr. 163). Dr. Degatur stated that Boudreaux experienced "extereme nervousness, anxiety[, and] apprehension" poor memory, sleep disturbance, mood disturbance, recurrent panic attacks, difficulty thinking or concentrating, blunt, flat or inappropriate affect, decreased energy, and generalized persistent anxiety. (Tr. 163-64). He noted that he had prescribed Zoloft and Zanax for her condition, and that the medications resulted in mild sedation and lethargy. (Tr. 165). Dr. Degatur gave Boudreaux a poor prognosis and stated that he anticipated that her condition would cause her to be absent from work more than three times per month. (Tr. 165-66). Dr. Degatur reported that Boudreaux had "moderate" limitations in the area of activities of daily living, "moderate" limitations in the area of maintaining social functioning, "often" had deficiencies of concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner, and had "continual" episodes of deterioration or decompensation in work-like settings. (Tr. 170-71).

Boudreaux was also treated by Dr. John P. Schutte, an orthopedic surgeon, in July and August 1991. On August 1, 1991, Dr. Schutte reported that Boudreaux had tenderness over the paraspinous muscles of the lumbar spine, but had full range of motion of her spine, good range of motion in both hips and was neurologically intact with brisk reflexes, normal sensation, and normal motor strength. She also had good dorsal pedis pulses bilaterally. (Tr. 199). Lumbar spine x-rays showed mild scoliosis, with no evidence of degenerative disc disease or

spondylolysis. (Id.). Dr. Schutte stated that he wanted to see the results of a recent MRI, and recommended that Boudreaux undergo a bone scan. On August 15, 1991, Dr. Schutte reported that Boudreaux's MRI results were normal, as was a bone scan. Dr. Schutte diagnosed Boudreaux with "mild sciatica" and recommended only stretching and anti-inflammatory medication. (Tr. 200).

Boudreaux was also treated by Dr. Olga Arter, a specialist in pain management, on September 6, 1991. The examination was normal, except for pain to palpation of the lumbar facet and right sacroiliac joint, with positive ilioinguinal and femoral nerve pain on the right. (Tr. 210). Between September 24, 1991 and December 9, 1991, Boudreax was treated at the Savoy Medical Center with a series of caudal epidural placements with serial injections of Marcaine, Wydase, Aristocort, and saline, as well as trial spinal cord stimulation. It appears that the treatments were successful, and that Boudreaux tolerated the procedures well. (Tr. 216).

Boudreaux was examined by Dr. Henry Lagarde, a clinical psychologist, on November 9, 1998. Although this report is dated after the relevant time period, it is included herein because it corroborates the opinions of Dr. Degatur regarding Boudreaux's mental health. Dr. Lagarde reported that Boudreaux's thought processes are logical and coherent, her speech was spontaneous and relevant, but her affect was anxious and depressed. (Tr. 214). He further stated that Boudreaux's profile was valid and consistent with a woman "who is very depressed and anxious." Dr. Lagarde reported that Boudreaux had no obvious signs of panic disorder or phobias, and that her anxiety was of a more generalized type, "affecting many different activities." (Tr. 215). Dr. Lagarde diagnosed Boudreaux with major depression, single episode, and generalized anxiety disorder. (Id.).

On June 17, 2002, Dr. Degatur responded to a letter from Judge Crump asking him to identify what, if any, mental limitations Boudreaux may have experienced between April 1, 1995 and December 31, 1996 and to give an objective basis for any functional limitations. Judge Crump apparently sent the request to Dr. Degatur in an attempt to comply with the Appeals Council's remand order of February 25, 2002.[3] Dr. Degatur responded as follows:

> Linda Boudreaux has no mental limitations *aside from moderately severe chronic anxiety and depression* which occasionally causes her to be agitated. Mentally she is competent, fully oriented.
>
> I am not sure if this is the information you needed. If I can be of further assistance, please do not hesitate to contact me.

(Tr. 525) (emphasis added).

## II. Opinion of Treating Physicians

Boudreaux contends that the ALJ did not accord proper weight to the opinions of Dr. Degatur, her treating physician. The ALJ found that, although Boudreaux showed evidence of a low back impairment of unknown etiology and some type of generalized depression and/or anxiety disorder, Boudreaux nevertheless retains the residual functional capacity for a significant range of sedentary work. In so concluding, the ALJ did not specify what weight she gave to Dr. Degatur's opinions. The record shows that Dr. Degtatur did not conclusively state that Boudreaux was disabled, however, he made it clear that Boudreaux's physical and mental limitations would cause her to miss at least several days of work each month. This suggests that Boudreaux cannot actually hold a job in a realistic work setting. Furthermore, as discussed *infra*,

---

[3] Although the undersigned was unable to find ALJ Crump's letter to Dr. Degatur, Dr. Degatur' response is in the record, and ALJ Molinar references ALJ Crump's letter in her unfavorable decision. See Tr. 392.

Dr. Degatur did not believe Boudreaux could perform a full or even significant range of sedentary work.

Although not conclusive, an evaluation by the claimant's treating physician should be accorded great weight. Martinez v. Chater, 64 F.3d 172, 175-76 (5th Cir. 1995), citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (U.S.1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(d)(2). Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." Martinez, 64 F.3d at 176, citing Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990). Where there are apparent conflicts in the record between or among medical sources, "the Commissioner, rather than the Courts, must resolve conflicts in the evidence." Martinez, 64 F.3d at 174. Thus, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Martinez, 64 F.3d at 176, citing Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir.1987) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation. Loza v. Apfel, 219 F.3d 378, 395 (5th Cir. 2000), citing Strickland v. Harris, 615 F.2d 1103, 1110 (5th Cir.1980); Goodley v. Harris, 608 F.2d 234, 236 (5th Cir.1979).

Because Boudreaux presents both a physical and a mental impairment as her disabling conditions, and because these impairments are analyzed differently under the Regulations, the undersigned will consider each impairment separately.

*Lower Back Pain*

At the hearing, Dr. Degatur's testimony confirmed his prior findings regarding Boudreaux's lower back pain, including his belief that she would have difficulty doing any kind of work that would require her to stay seated for more than 10 minutes at a time, that she would need frequent breaks, and that she cannot lift anything weighing more than 15-20 lbs. (Tr. 411). Nevertheless, Dr. Degatur confirmed that diagnostic testing during the relevant time period did not show any objective medical evidence of a lower back impairment, but rather, only evidence that she suffered from mild scoliosis and/or sciatica. (Tr. 412). The undersigned also notes that both Dr. Schutte and Dr. Arter failed to identify any clinical findings of a lower back impairment that would substantiate Boudreaux's complaints of disabling pain. Indeed, Dr. Schutte reported that Boudreaux had full range of motion of her spine, good range of motion in both hips, with brisk reflexes, normal sensation, normal motor strength, and good dorsal pedis pulses bilaterally. (Tr. 199). Lumbar spine x-rays showed mild scoliosis, with no evidence of degenerative disc disease, spondylolysis, or other bony problems, while an MRI and bone scan were normal. (Tr. 199- 200).

The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when such pain is constant, unremitting, and wholly unresponsive to therapeutic treatment. Francois v. Commissioner of Social Sec., 2001 WL 322194, *11 (E.D. La. 2001), citing Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). As to a determination of whether a claimant's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to produce the pain alleged. Francois, 2001 WL 322194, at *11. Generally, medical factors that indicate disabling pain include limitation of

range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling, and muscle spasm. Id. Other "medical signs" that support a finding that a claimant is disabled include a physician's diagnosis based upon history, symptoms and response to medication.

When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is to evaluate the claimant's credibility. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991). "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." Carrier, 944 F.2d at 246. This court may not reweigh the evidence. *Id., citing* Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir.1990).

In the instant case, there is simply no objective medical evidence of an impairment that could reasonably be expected to produce Boudreaux's alleged pain. Additionally, Boudreaux has demonstrated none of the signs of disabling pain, including muscle atrophy or strength, sensory, or reflex deficits, weight loss, or muscle spasm. Indeed, Dr. Degatur does not opine anywhere that Boudreaux's back pain, by itself, is disabling. While Boudreaux no doubt has some degree of pain in her lower back, the undersigned concludes that the ALJ did not err in concluding that such back pain is not disabling, given that there is no diagnostic or other objective evidence in the record to substantiate Boudreaux's complaints. Considering the foregoing, the undersigned concludes that the ALJ properly discounted Dr. Degatur's opinion regarding Boudreax's back pain in concluding that such pain is not disabling.

### *Depression/Anxiety Disorder*

The Commissioner utilizes a corollary sequential procedure for determining the merits of mental disability claims. Essentially, this procedure substitutes specialized rules at Step 2 for

determining whether mental impairments are severe, and also provides detailed guidelines for making Step 3 determinations as to whether mental impairments meet or exceed severity of mental impairments contained in the Listings, as follows:

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004),[4] citing 20 C.F.R. §404.1520a(b)(1).

2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(b)(2). To perform this latter step, the ALJ should assess the claimant's degree of functional limitation in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3). If the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(2) (2002).

4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(3) (2002).

---

[4] The undersigned was unable to find any Fifth Circuit cases setting forth the proper procedure for analyzing mental disability claims since the revisions and amendments to 20 C.F.R. §404.1520a in 2000. The revisions and amendments became effective on September 20, 2000. 65 Fed. Reg. 50,746 (August 21, 2000). See Boyd v. Apfel, 239 F.3d 698, 705 n.11 (5th Cir. 2001). The Serrano-Diaz decision is therefore cited as the most succinct summary of the current law that the undersigned was able to find during research for this report and recommendation.

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1). In the Fifth Circuit, courts must adhere to the standard set forth in Stone v. Heckler, 752 F.2d 1099 (5th Cir.1985) in assessing severity of an impairment. In Stone, the Fifth Circuit declared that severity of an impairment must always be determined with regard to an individual's *ability to perform substantial gainful employment,* and cannot be based on medical severity alone. Moreover, the Fifth Circuit articulated the correct severity standard as:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

Stone, 752 F.2d at 1101. The court further stated that "[W]e will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." Id. at 1106.

In the instant case, it does not appear that ALJ Molinar applied the mental impairment analysis mandated by the Regulations, as is evidenced by her failure to make specific findings regarding Boudreaux's limitations in the four areas of functioning listed in §404.1520a(c)(3). Nevertheless, the record shows that Dr. Degatur concluded that Boudreaux had "moderate" limitations in the area of activities of daily living, "moderate" limitations in the area of social

functioning, "often" has deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and had "continual" episodes of deterioration or decompensation in work-like settings. (Tr. 170-71). At the hearing on June 22, 2004, Dr. Degatur confirmed these earlier findings with respect to the time period between April 1, 1995 and December 31, 1996, testifying as follows:

| | |
|---|---|
| Q (ALJ Molinar): | In terms of what I would call social functioning, her ability to interact with other people appropriately, to adapt to new situations either at work or at home, how would you say that was affected? |
| A (Dr. Degatur): | I think that was very poor. I don't think she was able to adapt to new situations at all. |
| Q: | And how about her ability to maintain concentration, persistence and pace? Say for example if she was in a working situation and had a job where she had to maintain a productivity level. If she had to perform X number of tasks per hour, that type of thing? |
| A: | I think her performance level would again be extremely poor. |
| Q: | And is that again based on anxiety and ability to focus and to stay concentrating? That type of thing? |
| A: | Correct. |
| Q: | And would you say that was related to the pain or is this something that seems to be separate? |
| A: | I think separate but also affected by her pain levels but definitely on a separate level. |

(Tr. 413). Dr. Degatur further testified that he did not believe that Boudreaux would be able to function in a workplace setting, get along and deal with normal work stresses, or to interact appropriately with co-workers and supervisors. (Tr. 416-17). Dr. Degatur stated:

> Q (ALJ):   Okay...do you think that during this time period between '95 and '96, Ms. Boudreaux was capable of doing a low stress job with simple one or two step instructions?
>
> A:   I don't think on a routine basis she could. Maybe for a day or two but not on a – maintain a – on a daily, weekly, monthly basis.

(Tr. 417).

Unlike the medical evidence regarding Boudreaux's lower back pain, Dr. Degatur's testimony is uncontradicted. In 1998, Dr. Lagarde reported that Boudreaux's affect was anxious and depressed, (Tr. 214), that her profile was valid and consistent with a woman "who is very depressed and anxious," and that she had anxiety of a generalized type, "affecting many different activities." (Tr. 215). Dr. Lagarde diagnosed Boudreaux with major depression, single episode, and generalized anxiety disorder. (Id.). Additional evidence supporting a finding of disabling depression and/or anxiety are the fact that Boudreaux has been treated for depression and/or anxiety since 1987 and that she has been prescribed anti-depressant medications, including Zoloft and Xanax, for many years. Thus, unlike the contradicting medical evidence regarding Boudreaux's back pain, there is no contradiction in the medical evidence regarding Boudreaux's depression and/or anxiety. Considering the foregoing, the undersigned concludes that the ALJ failed to give proper weight to Dr. Degatur's opinions regarding Boudreaux's depression and/or anxiety and in failing to find these conditions disabling.

**B:   Residual Functional Capacity Assessment and Testimony of the VE**

Finally, Boudreaux contends that, due to the ALJ's flawed residual functional capacity assessment, the ALJ erred in relying upon the VE's testimony in concluding at Step 5 that Boudreaux is not disabled. The undersigned agrees.

The ALJ concluded that Boudreaux retains the residual functional capacity for a significant range of sedentary work, including the jobs of assembler and freight/stock/materials handler. However, the record shows that the ALJ did not include in the hypothetical question posed to the VE several limitations that Dr. Degatur stated Boudreaux would have in the workplace, including low or limited productivity requirements, an inability to maintain regular attendance and be punctual, an inability to handle normal work stress, and an inability to adapt to new situations. When faced with these limitations, the VE testified that such individual would be unemployable. (Tr. 437-39). The undersigned further notes that the jobs that the VE identified as being appropriate for Boudreaux – assembler and freight/stock/material handler – are jobs that Boudreaux's counsel has correctly pointed out are largely productivity-oriented. As the VE testified that a claimant with limited productivity requirements would be unable to maintain employment, the undersigned concludes that the ALJ improperly relied upon testimony that did not include such a limitation.

Considering the foregoing, the undersigned concludes that the ALJ failed to properly incorporate all of Boudreaux's limitations in his hypothetical questions posed to the VE, which resulted in an improper residual functional capacity assessment.

### *Conclusion*

Considering the foregoing, it is recommended that the ALJ's decision be **REVERSED**, and that Boudreaux be awarded benefits consistent with an onset date of April 1, 1995.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections

with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on September 2nd, 2005.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT:
DATE: 9-2-05
BY: gm
TO: TLM
cg